## Commonwealth of Pennsylvania ex rel. H. C. McCormick, Attorney General, *v.* Isaac Morgan, Appellant.

*Justices of the peace—Boroughs—Interpretation of constitution.*

Article 5 of sec. 11 of the constitution, declaring that "justices of the peace, or aldermen shall be elected in the several wards, districts, boroughs, and townships at the time of the election of constables . . . . in such manner as shall be directed by law. . . . No township, ward, district or borough shall elect more than two justices of the peace or aldermen, without the consent of a majority of the qualified electors," does not command the election of two justices of the peace for each ward of a borough.

*Justices of the peace—Boroughs—Division into wards—Act of April 3, 1851, May 14, 1874, and May 10, 1878.*

Where boroughs incorporated under the general borough act of April 3, 1851, P. L. 320, have been divided into wards under the act of May 14, 1874, P. L. 159, two justices of the peace cannot be elected for each ward in the borough, inasmuch as the supplement of the act of May 10, 1878, P. L. 51, provides that when any borough is divided into wards, by authority of the act of 1874, only two justices shall be elected by the concurrent votes of each ward. The act applies to boroughs, which, having been previously divided into wards, are further divided or subdivided under the act of 1874.

*Constitutional law—Title of act—Act of May 10, 1878.*

The act of May 10, 1878, P. L. 51, entitled, "A supplement to an act entitled an act to prescribe the manner in which the courts may divide boroughs into wards, approved May 14, 1874," does not violate article 3, section 3, of the constitution, which provides that "No bills except general appropriation bills, shall be passed containing more than one subject which shall be clearly expressed in its title."

Argued June 2, 1896. Appeal, No. 25, May T., 1896, by defendant, from judgment of C. P. Dauphin Co., Commonwealth

Docket 1896, No. 326, for plaintiff in quo warranto.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Quo warranto to determine the title of the defendant to the office of justice of the peace in Mahanoy City.

The facts appear by the opinion of the court McPHERSON, J., which is as follows:

The undisputed facts in this case appear from the pleadings and an agreement filed by the parties.   They are as follows:

The borough of Mahanoy City was incorporated in 1863, by the court of quarter sessions of Schuylkill county under the general borough act of 1851, P. L. 320.   Two years later a special act of assembly, P. L. of 1865, 639, divided it into two wards; and in the following year another special act of 1866, 403, after making a slight change in the division, named the wards East and West respectively.   In March, 1893, upon petition of certain inhabitants of the West ward, and after a proceeding under the act of 1874, P. L. 159, the court of quarter sessions of Schuylkill county divided the West ward into the First and Second wards; and at the same time upon petition of certain inhabitants of the East ward and after a like proceeding, divided that ward into the Third, Fourth and Fifth wards.

Since this division of the borough, the electors of each ward have voted for two justices of the peace, claiming that privilege by virtue of the act of June 21, 1839, P. L. 376, and there are now ten of these officials in the borough, of whom nine (now before us in this and similar proceedings) are acting by color of an apparent election for each ward separately, and a formal commission from the governor.

The defendant was thus elected to the office of justice of the peace by the voters of the Fifth ward of the borough at the February election of 1893, and thereupon a commission was issued by the governor; this apparent election and commission being the only support of his claim to exercise the duties, powers and privileges of the office.   He was elected by the separate votes cast in the ward, and not by the concurrent votes cast in all the wards of the borough.

In February, 1896, votes were cast concurrently in each ward for Jonathan L. Jones and Philip E. Coyle to fill the office of justice in said borough, and they have since received commission from the governor. Proceedings to contest their election are now pending in the proper court of Schuylkill county. The defendant denies the validity of their election, alleging that no vacancy existed because his own election was lawful and valid by virtue of the act of 1839, and accordingly that the present writ must also fail.

The parties have agreed by writing filed that if the court shall be of opinion " that there may legally be elected two justices of the peace in each ward of the borough, then judgment to be entered in favor of the defendant; otherwise judgment of ouster to be entered against him."

## DISCUSSION.

The decision of this case depends upon the constitutional provisions concerning the election of justices of the peace. As was frankly conceded in the argument, if the constitution does not command the election of two justices of the peace in each ward of a borough, the defendant has no case; for in the absence of such a command, the number of justices to be elected in the several wards, boroughs, districts or townships must be within the discretion of the legislature, and that discretion has been exercised (as will hereafter appear) in a manner adverse to the defendant's contention.

In order to a clear understanding of the subject under the present constitution it may be desirable to consider some of the earlier provisions of the constitutional and statutory law. The constitution of 1776 in section 30 of chapter 2 declares : " Justices of the peace shall be elected by the freeholders of each city and county respectively, that is to say ; two or more persons may be chosen for each borough, township or district as the law may hereafter direct ; and their names shall be returned to the president in council who shall commissionate one or more of them for each ward, township or district so returning for seven years, removable for misconduct by the general assembly ; but if any city or county, ward, township or district in this commonwealth shall hereafter incline to change the manner of appointing their justices of the peace as settled in this article, the general assembly

may make laws to regulate the same agreeable to the desire of a majority of the freeholders of the city, or county, ward, township or district so applying . . . ."

Under this section the legislative discretion was certainly very large. There is no command that one or more justices must be chosen in every ward, township or district; but the provision is, that two or more persons *may* be chosen for each borough, township or district as the legislature may direct, and when so chosen, the president in council shall select one or more of them for appointment and commission. Moreover the whole subject was expressly remitted to the assembly whenever a majority of the freeholders of any city or county, ward, township or district desired to change this manner of appointing. It is to be observed, also, that this section uses the word " district " which did not then and does not now, apply to any known and definite municipal or political division of the commonwealth. This, of itself, is a strong indication that the subject was wholly committed to the discretion of the legislature, in whose power it must rest to form the district.

The constitution of 1790, in article 5, section 10, reserves to the legislature the power of defining the districts in each county, but gives to the governor the power to appoint, and absolute discretion as to the number in each district. " The governor shall appoint a competent number of justices of the peace in such convenient districts in each county as are or shall be directed by law. They shall be commissioned during good behavior, but may be removed on conviction of misbehavior in office, or of any infamous crime, or on the address of both houses of the legislature." Under this section, the legislature was competent to declare the districts, but the governor had the power, which as is well known he exercised freely, of appointing as many persons in each district as he believed to be necessary.

The power of appointment was taken away by the amendments of 1838; article 6, section 7 declaring as follows : " Justices of the peace or aldermen shall be elected in the several wards, boroughs and townships at the time of the election of constables by the qualified voters thereof, in such number as shall be directed by law and shall be commissioned by the governor for a term of five years. But no township, ward or borough shall elect more than two justices of the peace or aldermen

without the consent of a majority of the qualified electors within such township, ward or borough." At this point the defendant begins his argument, contending that under this section at least two justices of the peace *must* be elected in every ward or every borough within the commonwealth. If this contention is not sound, his argument lacks an essential support, and it is necessary therefore to consider it with care.

It is possible to argue that the word "wards" used here and in the constitution of 1776 meant wards in cities. It is to be observed that in the earlier constitution the justices are to be elected by the freeholders of each city and county respectively, who are to choose two or more persons for each borough, township or district. Boroughs and townships were well-known divisions of a county, and a ward was the usual district or division of a city. Without difficulty, therefore, ward could be referred to the municipal division named by the section in which wards were chiefly known, and there is some probability that this construction is correct. The argument is somewhat strengthened by the fact that in the amendment of 1838 the word "alderman" is also used in this connection. With us, an alderman is an officer peculiar to a city. Doubtless he resembles closely a justice of the peace ; nevertheless, in this country, the name has been confined to officers in a city. Therefore, when the amendment of 1838 provides that justices of the peace or aldermen shall be elected in the several wards, boroughs and townships, a not improbable construction would refer the words to their appropriate consequents. If this view is correct, the section— so far as the present case is concerned—would read : " Justices of the peace . . . . shall be elected in the several . . . . boroughs and townships . . . . in such number as shall be directed by law . . . . But no township . . . . or borough shall elect more than two justices of the peace . . . . without the consent of a majority of the qualified electors within such township . . . . or borough."

It is not necessary, however, to insist upon this construction. Even if in a proper case the word "ward" may apply to a borough as well as to a city, the section would continue to read, that justices of the peace should be elected in the several wards, boroughs and townships " in such number as shall be directed by law ; " thus committing expressly the number of these offi-

cers to the discretion of the legislature.   The defendant's argument, that this language requires the election of two justices of the peace in each ward of a borough, would compel the further conclusion that two additional justices must be elected by the borough voting as a whole; and we are informed that in some of the boroughs this has actually been done.   Each ward has elected two justices of the peace, and the whole borough has elected two by a concurrent vote.   Presumably, the construction must be faulty which permits such a result.

Moreover, as it is plainly declared that justices of the peace are to be elected "in such number as is directed by law," if the section itself is to be regarded as compelling the election of two—that number being also fixed as a maximum—it is difficult to see what discretion in this respect is left to the legislature. The amendment does not name a minimum number but a maximum; and if at the same time it is supposed to fix a maximum and also to command that the maximum must always be elected, it must certainly be using language without due regard to its ordinary and natural meaning.

Exercising the discretion committed to it by the amendment just considered, the legislature in 1839 passed an act (P. L. 376) providing that the maximum number of justices of the peace and aldermen should be elected in each ward, borough and township, except in the city of Philadelphia, where only one alderman should be elected in each ward.   This exception shows clearly that the legislature did not understand the constitution as requiring the election of two officers in each ward or borough or township, but only as permitting it; and might be fairly set off against section 7 of the act of 1843, P. L. 60, in which the phrase is used "the number of justices or aldermen *allowed by the constitution to each ward.*"   If this phrase really bore the meaning upon which the defendant insists we would then have two opposing interpretations by the legislature of the constitutional provision, of which both would be entitled to respect, but neither would be conclusive.   But in our opinion the phrase means no more than "permitted by the constitution to each ward;" and therefore the two acts are not at all in conflict.   This appears distinctly from the act of 1846, P. L. 105, which is evidently drawn upon the act of 1843 as a model and deals with a similar subject.   It omits, however, the phrase

" allowed by the constitution to each ward," and substitutes what is evidently regarded as an equivalent statement, namely, " the proper number of aldermen or justices of the peace within the territories of either of such new divisions, according to the number allowed to each township, borough and ward, by an Act of the twenty-first day of June, one thousand eight hundred and thirty-nine."

The next statute in order is the general borough act of 1851, P. L. 320. The twenty-sixth section of that act provides that boroughs incorporated thereunder should elect at the first election two justices of the peace to serve for a term of five years ; and declares distinctly that " This section shall not be so construed as to authorize the commissioning of, or to have commissioned, more than two justices at the same time residing within said borough unless under the provisions of the existing laws they have by a vote of the electors increased the number of justices within the limits of any such borough or boroughs." The thirty-fourth section of the act expressly repeals " all general laws of the commonwealth " inconsistent therewith ; probably intending by this unusual provision to save special charters. The question, whether the act of 1839—so far as it required the election of two justices in each ward of a borough—continued to apply to boroughs incorporated under the act of 1851, was raised in Commonwealth v. Eno, 1 Kulp, 343. It was there decided that to such a borough this requirement of the act of 1839 did not apply, and that only two justices of the peace for the whole borough could be elected as is expressly directed by the act of 1851.

This decision has been considered in several other reported cases in the common pleas, but as they were finally put upon other grounds, it has not been necessary either to approve or disapprove its reasoning and conclusion. But, since the purposes of this case seem to make the declaration desirable, we have no hesitation in saying that we believe the decision to be correct. Section 26 of the act of 1851 is in this respect absolutely inconsistent with the act of 1839 ; and the repealing section makes it quite clear, as we think, that the legislature intended to establish a new rule for all boroughs to be incorporated under the general borough law.

If this position is sound, none of the defendants—either in this case or in the others argued at the same time—has a valid

defense; for the borough of Mahanoy City was incorporated by the court of quarter sessions of Schuylkill county in 1863, and the borough of Shenandoah was incorporated by the same court in 1866, under the provisions of this very statute. There has been no special legislation giving to either borough the right to elect more than two justices in the whole borough, and there is no other general law upon the subject except the act of 1839. It would therefore follow that the justices of the peace in these boroughs are not lawfully in office, and cannot successfully resist the commonwealth's writ.

Thus far we have not considered the present constitution. Section 11 of article V. declares as follows: " . . . . justices of the peace or aldermen shall be elected in the several wards, districts, boroughs and townships at the time of the election of constables by the qualified electors thereof, in such manner as shall be directed by law, and shall be commissioned by the governor for a term of five years. No township, ward, district or borough shall elect more than two justices of the peace or aldermen, without the consent of a majority of the qualified electors within such township, ward or borough; no person shall be elected to such office unless he shall have resided within the township, borough, ward or district for one year next preceding his election. In cities containing over fifty thousand inhabitants not more than one alderman shall be elected in each ward or district." The observations which we have made upon the amendment of 1838 apply with equal force to this provision. It means in substance what the amendment of 1838 means; and the construction above suggested receives additional support from the fact that in the section just quoted the word " district " is used, which is not to be found in the amendment of 1838. No such defined municipal division is known in our policy as has already been stated; and the use of this word is of itself enough to show that the present constitution did not intend to require the election of either one justice or two justices in each ward; because under the power to create " districts," wards—and perhaps other municipal divisions— might be grouped so as to form one district for the election of a justice or an alderman. It may be noticed also without insisting upon its importance that, when cities only are spoken of, justices of the peace are not named; the section declar-

ing that not more than one " alderman " shall be elected in each ward or district. But it is important to observe in considering further this particular provision, that the defendant's construction supposes that the constitution requires two justices to be elected in each ward of every borough, while the constitution itself is careful to say that in the wards of the larger cities not more than one alderman shall be permitted

Many of these wards contain separately a much more numerous population than any one of scores of boroughs in the state, and the volume of civil and criminal business is much more considerable. But, according to the defendant's view, the borough will certainly have two justices, and may have ten or even more, while the city ward can have no more than a single alderman.

Returning to the statutes of the commonwealth and laying aside the general borough act of 1851, we may assume for the moment that the act of 1839 continued to apply to boroughs incorporated under the later statute. Nevertheless we think the defendant is in no better situation, for it is still true that by more recent legislation, the act of 1839 has been so far repealed that in boroughs which have been divided into wards since 1874, only two justices of the peace can be elected by the concurrent votes of each ward. We refer to the act of 1874, P. L. 159, and its supplement of 1878, P. L. 51; especially to the supplement, of which the first section provides : " That whenever any borough in this commonwealth may be divided into wards in accordance with the provisions of the act to which this is a supplement, every such ward from and after such division shall be a separate election district, and annually thereafter shall elect not less than one or more than three members of borough councils, and shall elect such other public officers as are authorized in boroughs, wards and election districts under existing laws : Provided, however, that in every such borough there shall be elected a burgess, assistant burgess, two justices of the peace, three auditors, high constable, and six school directors, who shall be chosen by the concurrent votes of each ward, and their election shall be ascertained and declared by the joint certificates of the judges of election as hereinafter provided : And provided, further, that school directors and other officers who shall be so chosen by the concurrent votes of said

wards, shall be chosen for such terms as are now provided by existing laws." The borough of Shenandoah was divided into five wards in the year 1875 by the court of quarter sessions in pursuance of the act of 1874, and therefore falls expressly within the language of the supplement just quoted.

The situation of the borough of Mahanoy City is somewhat, although not essentially, different. It was divided into two wards by the special acts of 1865, P. L. 639, and 1866, P. L. 403. In March, 1875, as already stated, the court of quarter sessions subdivided these wards into five wards by proceedings under the act of 1874, P. L. 159. There was no other authority for this subdivision, for no special statute authorized it, and the act of 1874 was the first general law upon the subject.

It is therefore certain that the division of both boroughs into wards was made under the act of 1874; and as the supplement of 1878 provides distinctly that in any borough divided by this authority only two justices shall be elected by the concurrent votes of each ward, it follows as a necessary consequence that the defendant, who claims to have been elected by votes in one ward only, was not lawfully elected and must be ousted from his pretended office.

The questions arising upon this branch of the case have already been decided in two similar controversies, to which we venture to refer without repeating the reasoning by which the conclusions there reached are supported. We refer to Com. ex rel. Fox v. Pattison, 2 Dist. Rep. 128, in which Judge SIMON-TON holds, that the acts of 1874 and 1878 not only permit the erection of two or more wards in boroughs where none existed before, but permit also the division and subdivision of wards. As a consequence, where a borough already divided into two wards had been still further divided by proceedings under these statutes, he decided that the act of June 21, 1839, so far as it required the election of two justices for each ward, no longer applied; and that the borough was entitled under the act of 1878 to only two justices, who must be elected by the concurrent votes of the several wards. If this decision is thought to be in conflict with the decision in Com. ex rel. Neiman v. Pattison, 1 Lanc. Law Rev. 252, I am authorized to say that the difference is probably due to the influence of the special legislation concerning the borough of Pottstown, which was then

under consideration. But if the conclusion in the two cases should be found irreconcilable the later decision is to be accepted as the final judgment of the court upon this subject.

The other case is Com. ex rel. Fenner v. Pattison, 3 Dist. Rep. 599, in which the court passed without decision the question whether a borough incorporated under the general borough act of 1851 can elect only two justices of the peace by the concurrent vote of the borough; but decided that the act of 1878, which also provides for the election of two justices by the concurrent vote of the borough, applies to all boroughs divided into wards under the power given by the act of 1874, whether the division was made before or after the passage of the act of 1878. (In reply to a question in the defendant's brief, we may say that the sentence in the opinion, which declares that "since 1883 at least" the wards of Ashley borough have had no right to elect justices by a separate vote, was affected by a doubt whether the act of 1878 would disturb justices who were in office at the date of its passage. But, as their term of five years must expire not later than 1883, that year was named as the point of time from which the act would in any event apply.) We have reviewed and reconsidered these decisions; and believing them to be correct, we adhere to the conclusions there announced.

The defendant's final position is, that the act of 1878 is void as to the election of justices because its title does not obey the constitutional provision. This objection need not be considered at length. In effect, it has already been decided in Com. v. Taylor, 159 Pa. 451, in which the Supreme Court has held the title to this very act to be sufficient. In that case the election of school directors was in question, whereas now it is the election of justices of the peace; this being as we think an immaterial distinction. The defendant insists upon the difference as vital and argues that the title of the act of 1878 might be held sufficient so far as concerns the election of school directors, because their election is mentioned in the act of 1874, and therefore the supplement of 1878 is dealing with a subject embraced by the original act and germane to its provisions; whereas the act of 1874 says nothing about the election of justices of the peace.

There are two reasons against the validity of this argument. The first is that the title of the act of 1874 itself contains no

reference to the election of councilmen and school directors, although this subject is regulated by the fourth section. The title is simply: " An act to prescribe the manner by which the courts may divide boroughs into wards." This language was considered by the legislature and by the Supreme Court to give sufficient notice that elections in the boroughs would be necessarily affected by the division into wards, and therefore to satisfy the constitutional requirement. Manifestly under this ruling the act might have gone on to regulate the election of all other officers usually elected either in a borough as a whole, or in the wards into which it might be divided. If the title was sufficient to cover the subject of the fourth section, it must also be sufficient to cover the provisions of the supplement in which certain other officers of the borough are for the first time named and their election regulated. In brief, the general subject expressed in the original title includes the incidental subjects which are obviously connected so closely that the general subject cannot be touched without affecting the others.

The second reason why the constitutional objection ought not to prevail is a reason of inconvenience. If the objection is sound the provisions in the act of 1878 regulating the election of burgess, assistant burgess, auditors and high constable must also fall, as well as the provision regulating the election of justices of the peace. This is not a valid reason if a statute offends clearly against the constitution, but it is a relevant consideration and entitled to much weight when there is room for doubt upon this subject. Indeed, to doubt concerning the constitutionality of any statute is to be resolved in its favor; and it certainly cannot be said that the acts now in question are in clear violation of the fundamental law.

It was vigorously urged at the hearing of these cases that the business of both boroughs requires an unusual number of magistrates. Upon this point we need only say, that by the necessary implication of the constitution the number of justices may be increased by the consent of a majority of the qualified electors within the borough. Whenever, therefore, the borough desires to elect more than two, it has the power and the right to declare its will by the proper procedure. There is no danger that any public interest will suffer because of the action we are now obliged to take.

We have found the facts relating to the votes cast for Jonathan L. Jones and Philip E. Coyle in Mahanoy City, and for Martin J. Lawlor and John J. Cardin in Shenandoah, at the election in February, 1896, merely because these facts are part of the agreement. We express no opinion about their title to this office—which the court of Schuylkill county will determine —and consider the subject irrelevant to this proceeding.

It is therefore adjudged that the defendant is guilty of unlawfully holding and exercising the office, privilege and power of justice of the peace in the said borough of Mahanoy City; and it is further adjudged that he be ousted and altogether excluded from the said office, privilege and power, and that the commonwealth recover its costs from the defendant.

*Error assigned* was in entering judgment for plaintiff.

*Geo. J. Wadlinger*, for appellant.—Search where you will into the history of Pennsylvania as found in its several constitutions and amendments, the debates of the learned men who participated in the deliberations that framed the fundamental law of the state and the legislation down to the present time, and you will find that it was always a part of the organic law, that there shall be at least two justices of the peace in Pennsylvania for each ward.

The act of 1878 or the act of 1851 does not repeal by implication the act of 1839, giving each ward the right to elect two justices of the peace : Com. v. Eno, 1 Kulp, 344; Brown v. County Commissioners, 21 Pa. 43.

The act of 1839 applies to the borough of Mahanoy City: Taylor v. Mitchell, 57 Pa. 211 ; Dewart v. Purdy, 29 Pa. 113 ; Mustin v. Vanhook, 3 Wharton, 574; In re Juniata Twp., 31 Pa. 301 ; In re Alba Twp., 35 Pa. 271; Ins. Co. v. Hartshorne, 84 Pa. 453 ; Wilkes-Barre v. Crawford, 4 Kulp, 427 ; Brown v. Reiser, 8 Pa. C. C. 417 ; Brightly's Digest, 4825.

The act of 1878 and the act of 1874 are unconstitutional: Ruth's App., 10 W. N. C. 498; 4 Constitutional Debates, 257 ; Com. v. Pattison, 1 Lancaser Law Rev. 252.

*M. E. Olmsted*, *John P. Elkin*, deputy attorney general, and *Henry C. McCormick*, attorney general, for appellee.—The leg-

islation upon the subject clearly restricts the number of justices to two for each borough : Act of June 21, 1839, P. L. 76 ; Com. v. Eno. 1 Kulp, 343.

The act of May 10, 1878, P. L. 51, does not violate art. 3, sec. 3 of the constitution, relating to titles of acts, nor art. 3, sec. 6 of the constitution, relating to the amendments of acts : Com. v. Taylor, 159 Pa. 451 ; Fox v. Pattison, 2 Pa. Dist. Rep. 128 ; Com. v. Pattison, 3 Pa. Dist. Rep. 599.

There is no constitutional provision authorizing or requiring the election of two justices of the peace in each ward.

PER CURIAM, October 5, 1896 :

This case was argued with numbers 21, 22, 23, and 24 of May term, 1896, involving substantially the same questions.

A careful consideration of the record has satisfied us that there is no error in the judgment. The controlling questions have been fully discussed and correctly decided by the learned trial judge. It would serve no useful purpose to add anything to what has been so well said by him. The judgment is therefore affirmed on the opinion sent up with the record in this case.

